LEIGH M. CLARK, Retired Circuit Judge.
In one count of an indictment appellant was charged with burglary in the second degree. In the second count, he was charged with grand larceny. A jury found him guilty under the second count. The court then dismissed the first count of the indictment, adjudged defendant guilty of grand larceny and sentenced him to imprisonment for three years.
According to the undisputed evidence, about 1:00 on the afternoon of October 19, 1978, three young black men, including appellant, entered the apartment of Eddie Chandler at 122 Duncan Drive, Montgomery, Alabama, and took several items of furniture and food therefrom. As stated in appellant’s brief, his defense was that appellant, “When he entered the apartment, thought that it belonged to” one of the other two men “and that the things he took out of the apartment” also belonged to such person, whom defendant named in his testimony on the trial. A jury issue was definitely presented as to defendant’s felonious intent, and there is no contention to the contrary.
The burglary and larceny from the apartment were witnessed by Paul Turner, who promptly called Eddie Chandler, who was at work at the time and who promptly returned to his apartment. Either Mr. Turner or Mr. Chandler gave the police a description and tag number of the automobile that had been used by the three men as the apartment was burglarized and into which the men had placed a television set, some radios, some frozen food and some other items taken from the apartment.
Within less than an hour after the burglary and larceny, Officer F. A. McCracken of the Montgomery Police Department, observed defendant coming out of a parking spot in the second block of Dexter Avenue. He saw that the automobile matched the description that he had had of the automobile that had been used in the burglary and larceny; he also noticed that it bore the same license tag. He radioed for assistance. He and another officer then stopped the automobile, which appellant was driving. According to the testimony of Officer McCracken on a hearing on a motion by defendant to suppress evidence of items found by the officers in the automobile and a motion to suppress statements made by defendant, the following occurred:
“A. We stopped it and asked all of the occupants to step out of the car. When they stepped out of the car, we was explaining to them why we were stopping them.
“Q. What exactly did you say?
*818 “A. That a car fitting this description with three subjects in it, that a lookout was on it for a house burglary on Duncan Drive.
“Q. Do you recall who was driving that car?
“A. Yes, Sir.
“Q. Who was that?
“A. The Defendant over there.
“Q. Joshua Dorsey?
“A. Yes, Sir.
“Q. What did you do after that, Sir?
“A. We asked the driver, Mr. Dorsey if he would mind unlocking his trunk.
“Q. Did he make any statements prior to that?
“A. No, Sir.
“Q. Did he ask why he was being stopped?
“A. Yes, Sir.
“Q. And what did you tell him?
“A. We advised him that we had a description on a car fitting the description of his car and why it was being stopped.
“Q. And why was that?
“A. For the burglary on Duncan Drive.
“Q. And what happened then after you told him that?
“A. We asked him if he would mind unlocking his trunk and he said he would not and got the keys out of the ignition and stepped to the back of the car and opened up the trunk of the car.
“Q. Okay. Was that a verbal statement that he made?
“A. That he would not mind?
“Q. Yes, Sir.
“A. Yes, Sir.
“Q. Did he make any objection?
“A. No, Sir, he did not.
“Q. Who opened the trunk, Sir?
“A. He did.
“Q. Mr. Dorsey?
“A. Yes, Sir.
“Q. Were you present at that time?
“A. Yes, Sir, I was.
“Q. And what did you find in the trunk, Sir?
“A. There was T.V.’s in the trunk, radio, food.”
In arguing that the warrantless search of the automobile was illegal, it is stated in appellant’s brief:
. . However, the only justification suggested for Mr. Dorsey’s arrest was a radio dispatch. No attempt was made to show the circumstances giving rise to the dispatch. A radio dispatch can give sufficient probable cause for an arrest or a search, if the circumstances giving rise to the dispatch are sufficient to provide probable cause in the first place. Whiteley v. Warden, 401 U.S. 560, 28 L.Ed.2d 306, 91 S.Ct. 1031 (1971); Owens v. State, 51 Ala.App. 50, 282 So.2d 902 [402] (1973). As Mr. Justice Beatty wrote in Paschal v. State (S.Ct.Ala., 1978) 365 So.2d 681:
“ ‘If the law were otherwise, the mere suspicions insufficient to obtain a search warrant, nevertheless could be routed through a radio operator to the field and through that mechanical process gain legal credibility (365 So.2d 681, 682)’
“In this case, as in Paschal, supra, there was no evidence as to the circumstances giving rise to the dispatch. In Paschal the Supreme Court held that the evidence found must be excluded; it follows, therefore, that the trial judge erred in holding in the instant case that the dispatch justified the stopping of Mr. Dorsey’s car and the search.”
We agree with the principles of law stated in the above quotation from appellant’s brief, but we disagree with the attempted application thereof to the facts in the instant case. Specifically we do not agree with the statement:
“However, the only justification suggested for Mr. Dorsey’s arrest was the radio dispatch. No attempt was made to show the circumstances giving rise to the dispatch.”
We also disagree with the statement:
“In this case, as in Paschal, supra, there was no evidence as to the circumstances giving rise to the dispatch.”
*819 According to the record in the instant case, the officers stopping the automobile had detailed information as to the circumstances of the burglary and larceny that had taken place less than an hour before. They had sufficient description of the automobile that had been used in the burglary and larceny that enabled them to know beyond any reasonable doubt that it was the same automobile they located and stopped. They also had a description of the three persons engaged in the burglary and larceny that matched in some material respects descriptions of the persons in the automobile they stopped. They had probable cause for stopping the automobile.
The fact that the officers, who stopped the vehicle and discovered the stolen property and arrested defendant and his companions, were fully apprised of what eyewitnesses had said as to the circumstances giving rise to the radio dispatch makes in-apposite what has been held in cases in which the officers were not so apprised of the circumstances.
In declining to suppress the evidence as to the items found in the trunk of the automobile that the evidence shows were taken from the house that was burglarized, the trial court said, inter alia :
“I think you have established the probable cause for stopping the vehicle, and that it was a moving vehicle, of course, and that there are exigent circumstances in accord with Coolidge vs. New Hampshire, 403 U.S. 443 [91 S.Ct. 2022, 29 L.Ed.2d 564],

“In taking the totality of the circumstances here, the Court finds there was probable cause and the search was justified under the circumstances. . . .”
It appears that the trial judge overruled defendant’s motion to suppress the evidence as to the articles found in the trunk of the automobile, on the ground that the discovery of such objects came within the fifth of the six exceptions accurately and helpfully set forth by Mr. Justice Blood worth in Daniels v. State, 290 Ala. 316, 318, 276 So.2d 441 (1973), and by Presiding Judge Harris in Cook v. State, 56 Ala.App. 250, 320 So.2d 764, 768 (1975), which fifth exception is stated to be “[Ejxigent circumstances coincidental with probable cause as in the case of movables.”
That there was probable cause is clear, but probable cause alone is not sufficient. The other essential, exigent circumstances, is challenged by appellant. In considering all of the circumstances, particularly that three men (all suspects) were in the automobile, that the time and place the automobile was stopped presented problems as to its removal and security, that the security of the items the officers suspected were in the trunk of the automobile presented additional problems, that dilatory action by the officers at a busy intersection near the downtown area of Montgomery would likely have brought about congestion that would have created a snarl in traffic and an impediment to the officers in the pursuit of their duties, we conclude, as did the trial court, that what is referred to as a “search” of the automobile was conducted under exigent circumstances and did not constitute an unreasonable search or seizure forbidden by the Fourth Amendment to the Constitution of the United States.
In addition, we conclude that what has been referred to as a “search” comes within the second exception, “with consent voluntarily and knowingly given,” set forth in Daniels, supra, and Cook, supra. In testifying on the motion to suppress, defendant said in pertinent part:
“Q. And what did that officer say to you?
“A. He asked me to get out.
“Q. What happened then?
“A. All of us got out.
“Q. And what did you do then, or what did the officer say to you then; anything?
“A. No, Sir. I asked him why was he stopping us, and he told me he would tell me in a minute. So we just waited.

“THE COURT: What did he tell you? Did he tell you anything in a minute?
*820 “THE WITNESS: No. We waited for a little while, and he asked me to open my trunk.
“Q. And what did you do then?
“A. I opened the trunk for him.
“Q. Did you make any objections?
“A. No.
“Q. Did you say anything at all?
“A. No.
“Q. What happened after that?
“A. Well, I opened the trunk and he said we was under arrest.”
Defendant was the owner and the driver of the automobile. He is the only one who would have had authority to have consented to the opening of the trunk. A mere expression of consent to a search by an accused is not sufficient. There must be clear, convincing and positive testimony that the accused has waived his rights. His consent must be “unequivocal and specific,” and “freely and intelligently given.” Duncan v. State, 278 Ala. 145, 176 So.2d 840, 852, 853 (1965); United States v. Page, 302 F.2d 81 (9 Cir. 1962). A strong and unusual circumstance in favor of the voluntariness of the action of defendant in unlocking the trunk of the automobile, when “asked” to do so by an officer, is to be found in his own testimony, that he was misled by one of the other participants in the crime into believing that the property stolen and the apartment burglarized belonged to him. Although the jury did not accept his testimony as to his innocence of a felonious intent, the trial court could not say, and we cannot say, that, whether guilty or not, he did not prefer, immediately after the automobile was stopped, to manifest innocence by promptly and voluntarily, in the fullness of that word, revealing to the officers the fruits of the crime that he then realized had been committed.
Appellant claims prejudicial error in the refusal by the trial court of the following charge requested in writing by defendant:
“No. 16.
“I charge you members of the Jury that if you are not convinced beyond a reasonable doubt by the evidence that the property alleged to have been stolen in Count Two of the indictment was worth at least five dollars, you may not find the Defendant guilty of grand larceny, but you may find him guilty of petit larceny.”
As five dollars constitutes the dividing line between grand larceny and petit larceny “from or in any dwelling house” (Code 1975 § 13-3-50), the lesser offense of petit larceny was included in Count Two of the indictment charging grand larceny of property of an aggregate value of “$315.00.” The only witness who testified as to the value of the property was the owner thereof, who testified that the T.V. set had a value of around two hundred dollars, the two radios had a value of between twenty and thirty dollars, the clothing taken had a value of about twenty dollars and the food had a value of fifteen dollars. We agree with appellant that the jury was not bound by the evidence of the owner as to the value of the items of property stolen, but it is inconceivable that the property stolen in its aggregate did not have a value of more than five dollars. Furthermore, although the trial court did not charge as to the lesser included offense in its oral charge and refused defendant’s requested charge 16, it did in the last paragraph of its oral charge to the jury (just before three paragraphs in which it informed the jury that it would be excused for lunch, gave them appropriate instructions as to their conduct during the lunch period, directed them to return at 2:00 P. M., at which time he submitted the case to them for their deliberations and verdict) charge the jury as follows:
“I would further say to you with regard to the offense of grand larceny that you must further be satisfied beyond a reasonable doubt that the value of the property that was taken was in excess of five dollars before you could return a verdict of guilty of the offense of grand larceny.”
Immediately after the last word was said by the court to the jury at that time, the following occurred:
“THE COURT: Satisfied, Mr. Marston (Defendant’s counsel)?
*821 “MR. MARSTON: Yes, I am, Your Hon- or.
“MR. MILLER: (State’s counsel): Satisfied, Your Honor.”
Thereupon, the recess for lunch commenced.
The foregoing recital from the record indicates, if it does not conclusively show, that, as defendant was satisfied with what the trial court had charged the jury on the subject of the necessity for the value of the property to be as much as five dollars to constitute grand larceny and did not at that time expressly indicate that the trial court should submit to the jury an issue as to defendant’s guilt of petit larceny, he saw no injury to defendant by the court’s refusal of defendant’s charge 16. At any rate, in view of the great disparity between the value placed on the property by the owner-witness in the case, and the statutory flooring in the value required for grand larceny, common knowledge, of which the court takes judicial knowledge, that the aggregate value of the property taken could not have been as little as five dollars, and all the circumstances, there was no injury to defendant by the court’s refusal of charge 16.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.