494 So.2d 719 (1986)
Ex parte STATE of Alabama.
(Re Rodney SPANN and Brenda Spann v. STATE of Alabama).
84-1168.
Supreme Court of Alabama.
July 11, 1986.
Rehearing Denied September 12, 1986.
*720 Charles A. Graddick, Atty. Gen. and Jean Alexandra Webb, Asst. Atty. Gen., for petitioner.
James D. Farmer of Farmer, Baxley, Ramsey, Farmer & McDougle, Dothan, for respondent Rodney Spann.
John E. Byrd, Dothan, for respondent Brenda J. Spann.
ADAMS, Justice.
We granted certiorari in this case to address the State's contention that the judgment of the Court of Criminal Appeals, 494 So.2d 716 is in conflict with the United States Supreme Court's decision in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Briefly stated, the facts in the case are that Rodney and Brenda Spann were arrested on October 18, 1983, for possession of marijuana. It is undisputed that the two arresting officers, Jerry Hunt and Jimmy Maddox, received a radio dispatch stating that there was a marijuana sale taking place in a red Chevrolet Camaro automobile in the parking lot of the Red Barn Lounge and Package Store. The officers arrived at the scene in their separate cars and, after having blocked the Camaro's exit from the parking lot, Officer Maddox noticed that the car had an improper tag. Officer Hunt testified that, while he was questioning Rodney Spann about the improper tag, he noticed on the floor board of the car, in plain view, a cassette tape case, partially closed, containing what was later identified as marijuana. He seized the marijuana and arrested the occupants of the automobile. Finally, although both officers initially testified that the Camaro was stopped to investigate the improper tag, they later admitted that the car was stopped solely on the basis of the radio dispatch.
Rodney and Brenda Spann were convicted of possession of marijuana and received $1,000.00 fines and prison sentences of ten and two years, respectively. They appealed, and the Court of Criminal Appeals reversed their convictions, stating that there was insufficient probable cause upon which to base a warrantless search. In its petition for certiorari, the State asserts that, under the rigid, two-pronged test for probable cause set forth in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968), and Aquilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the arresting officers in this case before us would not have been able to prove probable cause; however, the State argues that under the "totality of the circumstances" test adopted in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 761 L.Ed.2d 527 (1983), probable cause existed and the Court of Criminal Appeals should have affirmed the convictions. Since it is not absolutely clear which test the Court of Criminal Appeals used when it considered this case, we granted certiorari to review the facts under the "totality of the circumstances" test.
In Illinois v. Gates, supra, the United States Supreme Court addressed the issue of which test should be used to determine the existence of probable cause, stating:
For all these reasons, we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in Aquilar and Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set *721 forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aquilar and Spinelli.

462 U.S. at 238-39, 103 S.Ct. at 2332 (Citations omitted.)
The State's sole argument in its petition is that by using the totality-of-the-circumstances test, a reasonable person would be justified in believing that the information provided by the anonymous informant was reliable because the radio dispatch stated that a red Camaro was at the Red Barn parking lot, and, when the officers arrived, a red Camaro was found at the Red Barn parking lot. We cannot agree.
According to Illinois v. Gates, the veracity and basis of knowledge of the informant are still two factors which are to be considered, along with all the other circumstances, when trying to determine if probable cause exists. In the case before us, there was a complete lack of proof at trial, either documentary or through testimony, of the reliability or the basis of knowledge of the informant. This Court was presented with a case similar to the one sub judice, dealing with the warrantless search of an automobile, in Paschal v. State, 365 So.2d 681 (Ala.1978). In holding that no probable cause existed, the Court stated:
Therefore, in effect, the Court of Criminal Appeals held in the present case that the requirement of probable cause which is necessary in any search, warrantless or not, see United States v. Brennan, 538 F.2d 711 (5th Cir.1976), was satisfied by the radio dispatch, and the radio dispatch alone. Such a holding, however, is contrary to that Court's earlier decision in Owens v. State, 51 Ala. App. 50, 282 So.2d 402, cert. denied 291 Ala. 794, 282 So.2d 417 (1973).
In Owens, supra, an officer observed a man getting into an automobile near the scene of a burglary. He radioed headquarters with a description of the automobile. An all points bulletin (A.P.B.) was then put out by the radio operator. Law enforcement officers in another town heard the radio report, stopped the automobile and then searched it. The Court of Criminal Appeals held that:
[T]he [arresting] officers at Town Creek could rely on the radio broadcast but the subsequent determination by any court as to probable cause must necessarily turn on all the circumstances giving rise to the police dispatch.... (emphasis added).
The court went on to find that on the facts of that case there was no probable cause to search the automobile. In the present case there is no evidence of the underlying circumstances which gave rise to the dispatch; there is merely the naked fact that a radio dispatch had described an automobile that fit the description of the defendant's automobile. As Owens clearly shows, this is insufficient to establish probable cause, and therefore the search was unreasonable under Coolidge, [v. New Hamapshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)], Kinard [v. State, 335 So.2d 924 (Ala.1976)] and Owens. If the law were otherwise, then mere suspicions insufficient to obtain a search warrant, nevertheless could be routed through a radio operator to the field and through that mechanical process gain legal credibility; in fact, if the broadcast were enough in itself to justify a search, as the court below appears to hold, then the State would never need to enter into evidence the suspicions behind the broadcast. As we have shown, that is not the law in this state. Hence, the majority of the Court of Criminal Appeals erred in *722 holding that probable cause was established by the radio dispatch alone.
365 So.2d at 682.
Even considering these facts under a totality-of-the-circumstances test, we see no reason why they justify a different result than the one reached in Paschal v. State. Therefore, the judgment of the Court of Criminal Appeals is due to be, and it hereby is, affirmed.
AFFIRMED.
JONES, ALMON, SHORES, BEATTY and HOUSTON, JJ., concur.
TORBERT, C.J., and MADDOX and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
I would reverse the judgment of the Court of Criminal Appeals. I have reviewed the case against the backdrop of the latest United States Supreme Court decisions dealing with the "exclusionary rule." As I read these decisions, the Supreme Court has now applied a "totality of the circumstances" test to searches and seizures, and has, in effect, overruled the strict requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968). The Court of Criminal Appeals relies upon this Court's case of Paschal v. State, 365 So.2d 681 (Ala.1978), and, although I dissented in Paschal, and it would appear that I am just adhering to the views I expressed in my dissent, that is not the case. I firmly believe that the Supreme Court has modified the "exclusionary rule." My reasoning is based upon the decision of the Supreme Court in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Consequently, I believe each of the cases cited by the Court of Criminal Appeals, including our own, are not sound authority today, especially in view of the rule announced in Illinois v. Gates. I realize that Illinois v. Gates involved a warrant, as opposed to a warrantless search, as here, but I am of the opinion that the "totality of the circumstances" rule announced in Illinois v. Gates and the "good faith" exception set forth in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 702 (1984), especially in view of the "automobile exception" to the warrant requirement set forth in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1929), apply to the facts here. In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), Justice Stevens dissented as to the search of the house, but concurred in the holding that the search of the automobile there was justified.
I believe that police officers who conduct an investigation into alleged illegal activity as a result of a radio bulletin should not have evidence obtained as a result of that investigation excluded unless the officers, based on a "totality of the circumstances," are found not to have acted in "good faith." In other words, applying the principles of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Carroll v. United States, supra, Illinois v. Gates, supra, and United States v. Leon, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 702 (1984), I believe that the officers were justified in doing what they did, and that our Paschal case, even if correct initially, although I do not think so, should no longer be followed.
Mr. Justice Black, dissenting in Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), stated:
"With all respect to my Brethren who agree to the judgment and opinion of the Court, I am constrained to say that I believe the decision here is a gross and wholly indefensible miscarriage of justice. For this reason it may well be classified as one of those calculated to make many good people believe our Court actually enjoys frustrating justice by unnecessarily turning professional criminals loose to prey upon society with impunity." 401 U.S. at 570, 91 S.Ct. at 1038.
Justice Black also wrote:
"It surely cannot be said that when a sheriff, with his prestige and standing, and bond against civil suit, communicates an emergency message to arrest men in cars as burglars, a policeman must stand supinely by while two people denounced *723 as burglars go along their way. Of course these policemen had enough information from the sheriff to have probable cause to arrest petitioner." 401 U.S. at 573, 91 S.Ct. at 1039.
I would at least remand the case to the Court of Criminal Appeals for consideration of it in light of Illinois v. Gates.
While I am aware that an "informant" might give police false information, and that the possibility exists that an innocent person could be framed by an "informant," I cannot assume that citizens will violate the law, which prohibits false reporting to law enforcement officers (Code 1975, § 13A-10-9). Nor do I believe that the result I would reach in this case would cause an unconstitutional intrusion upon the lives of citizens by police officers, who are presumed, at law, to do their duty. If police officers fail to follow the law in any particular case, then the courts are empowered to exclude any evidence which the police obtain by their illegal conduct.
Because I believe that the majority opinion fails to follow the more recent interpretation of the "exclusionary rule" by the United States Supreme Court, I must respectfully dissent.
TORBERT, C.J., and STEAGALL, J., concur.