McMILLAN, Judge.
This court affirmed this cause in an opinion authored by a supernumerary judge on May 27, 1986. Usrey v. State, 527 So.2d 725 (Ala.Cr.App.1986). The Alabama Supreme Court remanded this cause on the basis of an issue involving the warrant-less search of the appellant’s residence. Ex parte Usrey, 527 So.2d 732 (Ala.1987). Although this court determined that the *742 warrantless search was proper under the exigent circumstances exception, the Alabama Supreme Court determined that that exception was inapplicable to the facts of this case, citing Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), and Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), which rejected the “murder scene” exception to the warrantless search and seizure rule. It remanded this case with instructions for this court to determine whether the evidence seized and photographs taken depicted items that were in plain view. Under Thompson v. Louisiana, supra, the exigent circumstances which were initially present in this case, the “victim-suspect” search, would have justified only the seizure of evidence that was in plain view. The only evidence which the appellant argues was erroneously admitted on these grounds, was certain photographs which were taken during the search. The appellant notes that under Teat v. State, 409 So.2d 940 (Ala.Cr.App.1981), there must be proof in the record that the evidence seized by photograph was in plain view.
The record indicates that State’s Exhibit No. 4 was a photograph taken from the south side of the inside of the trailer and that it depicted an “interior short view as you come in the front door.” State’s Exhibit No. 5 is a photograph depicting the .22 caliber rifle which was found on the kitchen table. State’s Exhibit No. 6 was a photograph showing the hallway beside the kitchen, leading into the back bedroom. The photograph also depicted Officer Bat-son pointing at something on the floor. Officer Batson testified that the object to which he was pointing was a live round which he found on the floor at the scene. State's Exhibit No. 7 was identified as a photograph of the hallway and the kitchen area which showed a spent round near the floor register. State’s Exhibit No. 1 was a photograph depicting the box of shells which were found on top of the dresser. State’s Exhibit No. 2 depicted a live round of ammunition which was lying “at the foot of the chest of drawers.” State’s Exhibit No. 3 was a photograph depicting a second live round which was found in the hallway on the floor near the bathroom. State’s Exhibits No. 9 and No. 10 were photographs depicting two spent cartridges near the entrance of the back bedroom: one located 24 inches inside the carpeted area and the other located by a small electrical heater. State’s Exhibit No. 11 was a photograph depicting another spent cartridge found near the floor register of the back bedroom. The picture also portrayed someone pointing to the spent cartridge; the victim’s body was also shown in the photograph. State’s Exhibit No. 12 was a photograph depicting another spent casing which was located at the foot of the bed in the back bedroom where the body was found. The photograph also showed the head of the victim. State’s Exhibits 13 and 14 were photographs depicting a spent shell casing against the bottom of the bathroom door in the back bedroom. He further testified that one of the photographs was taken with the door open and the other was taken with the door closed. However, he stated that the same cartridge was depicted in both photographs. State’s Exhibit 15 was a photograph depicting a spent cartridge located outside the trailer and almost directly in front of the front door. State’s Exhibits 16 through 22 depicted the victim’s body in the back bedroom of the trailer. Officer Batson testified that the photographs specifically depicted entrance wounds to the body. State’s Exhibit 23 was a photograph of the chest of drawers in the back bedroom where the body was found. State’s Exhibit 24 was a photograph depicting the telephone which was located on the back wall near the back door which was “off the receiver.” The photograph also depicted a small counter area near the stove. Officer Batson testified that each of these photographs fairly and accurately portrayed the items depicted as he found them on the day in question.
The record indicates that Officer Batson testified that, when he arrived at the trailer, he had only been informed that a shooting had occurred and he did not know whether the victim was alive or dead. He testified that he entered the trailer to ascertain whether the victim needed medi *743 cal attention. He stated that he entered by the front door, walked around a partition which separated the kitchen from the living room, walked down the hallway past the kitchen and into the back bedroom where the body was located. He testified that en route to the back bedroom, he observed the rifle, empty casings on the linoleum outside the bedroom, in the hall, and several casings in the back bedroom near the body. He testified that he observed the shell which was by the edge of the bathroom door, about 13 or 14 inches from the body. Thereafter, he took custody of the scene. Evidence may be seized in a limited victim- or-suspect search, Mincey v. Arizona, supra, or if the officer is in the house to offer the victim assistance and the evidence is in plain view. Officer Batson’s testimony proves that the evidence photographed was in plain view as he conducted his limited search to find the body. As noted by the Alabama Supreme Court in Ex parte Us-rey, supra, if the photographs depicted only items within the plain view of Officer Batson, then the taking of the photographs did not constitute an illegal search. After a thorough review of the record, we are convinced that the photographs simply depicted items within the plain view of Officer Batson. Therefore, they were properly admitted into evidence and the trial court’s decision is due to be affirmed.
AFFIRMED.
All Judges concur.